UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BETTY NANCE,

        Plaintiff,        CIVIL ACTION NO. 05-CV-71644-DT

  vs.        DISTRICT JUDGE VICTORIA A. ROBERTS

COMMISSIONER OF        MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

## AMENDED REPORT AND RECOMMENDATION

This Court recommends that Defendant's Motion For Summary Judgment be GRANTED, and Plaintiffs Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

This is an action for judicial review of the final decision of the Commissioner of Social Security that the Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423(d). The issue for review is whether there was adequate support for the Commissioner's decision that the Plaintiff is not disabled.

Plaintiff Betty Nance filed an application for DIB on October 13, 2000. This initial application was finally denied by Administrative Law Judge ("ALJ") Michael F. Wilenkin in a written opinion issued on February 4, 2002. (Tr. 34). Plaintiff filed a second DIB application on July 1, 2002, alleging that she had been disabled since April 1, 1994.[1] (Tr. 52). Plaintiff's second application was initially denied. (Tr. 44). Plaintiff requested review of that decision and obtained a hearing before ALJ Alfred H. Varga on March 26, 2004. (Tr. 425-455). The ALJ denied Plaintiff's claim in a written opinion issued July 1,

---

[1] Because the Commissioner's prior final decision is not before the Court, the Court's review in the instant case is limited to the period from February 5, 2001 to the present.

2004. (Tr. 11-21). Defendant denied Plaintiff's request for reconsideration of the hearing decision, and the ALJ's decision is now the final decision of the Commissioner. (Tr. 5-7); 20 C.F.R. § 404.981. Plaintiff has appealed the ALJ's decision to this court. Both Parties have filed motions for summary judgment.

## MEDICAL HISTORY

Plaintiff was born on July 4, 1957. (Tr. 55). Plaintiff suffers from chronic neck pain, degenerative disc disease, and psychiatric problems. On September 13, 2002 Syed N. Iqbal, M.D. examined Plaintiff on behalf of the Michigan Disability Determination Service. (Tr. 192- 208). Plaintiff complained of persistent severe pain in her neck and head, and also of persistent numbness in the area where she had undergone neck surgery in January, 2000. (Tr. 192). Plaintiff also complained of persistent radiating pain in her lower back since a 1999 auto accident. (Tr. 193). During Dr. Iqbal's examination, Plaintiff was able to sit, walk, and stand normally. (Tr. 195). Plaintiff's memory, orientation, and concentration appeared normal. *Id.* On examination, Plaintiff's head, neck, knees, and spine were also normal. *Id.* Plaintiff's range of cervical spinal motion was restricted, but she demonstrated a full range of motion in the rest of her spine. (Tr. 196). There was no evidence of paraspinal muscle spasm of spinal tenderness on palpation. *Id.* Dr. Iqbal noted that he headaches were "hard to explain." (Tr. 206).

A. Kumar, M.D. performed a psychiatric examination of Plaintiff on September 17, 2002. Plaintiff reported vague suicidal feelings, had a depressed, anxious mood with a blunted affect, but denied specific suicidal thoughts, hallucinations, delusions, obsessions, or thoughts of being controlled by others. (Tr. 210). Plaintiff was oriented, and in touch with reality. Her speech was spontaneous, coherent, relevant, and well organized, and she was able to perform basic mental tasks. (Tr. 209-211).

Dr. Kumar opined that Plaintiff suffered from major depression without psychotic features and gave Plaintiff a Global Assessment of Functioning ("GAF") score of 42 points out of 100. (Tr. 211).

On November 5, 2001 Daniel Blake, Ph.D. performed residual physical and functional capacity assessments of Plaintiff and completed a form titled "psychiatric review technique" for the Michigan Disability Determination Service. (Tr. 80-105). Dr. Blake found that Plaintiff was exertionally capable of sedentary work, could stand or walk for up to two hours in an ordinary workday, and could occasionally climb, balance, stoop, kneel, crouch, or crawl. *Id.* He also found that Plaintiff had moderate limits in her abilities to understand and carry out detailed instructions, maintain attention and concentration, be punctual, or perform at a consistent pace, but that Plaintiff did not meet the requirements of any listed psychiatric impairment. *Id.*

On December 7, 2002 Adekune Ajayi, M.D. filled out a form in which he checked boxes indicating that Plaintiff had "poor to no" ability to relate to co-workers, interact with supervisors, deal with the public, deal with work stresses, maintain attention or concentration, behave in an emotionally stable manner, understand and carry out even simple instructions, relate predictably in social situations, or demonstrate reliability. (Tr. 212-213).

Plaintiff was examined on by Augusto Jamora, M.D. on January 30, 2004. Plaintiff demonstrated a logical, coherent, and appropriate thought process, was oriented, was able to concentrate, and was able to maintain attention. (Tr. 264-266). Plaintiff had a depressed, anxious mood, but had an appropriate affect and denied thoughts of suicide. *Id.* Dr. Jamorra indicated that Plaintiff's primary complaint was constant severe pain, and concluded that Plaintiff suffered from a pain disorder and a dysthymic disorder. (Tr. 266). Filling out a form titled "Medical Assessment of Ability to do Work Related Activities," Dr. Jamorra noted that he had only seen Plaintiff once, but assumed that she would have difficulty working based on her description of her condition. (Tr. 287). He concluded that

Plaintiff had no ability or only poor ability to behave in an emotionally stable manner, relate predictably in social situations, or be reliable. (Tr. 288).

Treatment notes from Plaintiff's psychotherapists from September 2001 through late 2004 indicate that Plaintiff had a consistently depressed mood, and varying levels of other mental problems. (Tr. 218-43; 260-290). Plaintiff generally denied suicidal or homicidal ideation, and was typically able to maintain concentration. *Id.* Plaintiff's thought process and content were generally appropriate, but were sometimes circumstantial and ruminative, concentrating particularly on Plaintiff's feelings of pain. *Id.* Plaintiff complained of subjected dizziness on several occasions, and her speech was noted to be slow on at least one occasion (Tr. 226, 229, 246; 228).

## **HEARING TESTIMONY**

The ALJ took testimony from Plaintiff at the March, 2004 hearing. Plaintiff complained that she suffered from daily severe migraine headaches, which caused pain in the back of her head, neck, and shoulder. (Tr. 430-31). Plaintiff stated that she takes medications for these headaches when they arise, and then lies down for four or five hours during the day waiting for the pain to subside. (Tr. 433). Plaintiff reported that her headache medications make her sleepy. (Tr. 435-36).

Plaintiff also reported that she experiences panic attacks and anxiety, and that she is scared of going to sleep. (Tr. 437). Plaintiff also noted that she had suicidal thoughts, cried often, and spent the majority of most days sitting in silence. (Tr. 439, 442).

The ALJ also took testimony from a vocational expert, Asa Brown. (Tr. 449). The vocational expert was asked to testify about the availability of jobs for a hypothetical person of Plaintiff's age, gender, and educational level who had certain functional limitations. The ALJ asked the vocational expert to testify about the availability of work for a person capable of performing simple, low stress, sedentary work in a relatively pollutant free, indoor environment with a sit/stand option that did not

require the ability to lift more than five pounds, and involved no exposure to unprotected heights or dangerous machinery, and limited contact with other people. The vocational expert testified that while such a person could not do any of Plaintiff's past work, she could perform work a few thousand positions in the regional economy. (Tr. 452).

## STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## **DISCUSSION AND ANALYSIS**

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

(1) she was not presently engaged in substantial gainful employment; and

(2) she suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) she did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R.. § 416.920(a)-(e). If Plaintiff's impairments prevented her from doing her past work, the Commissioner would, at step five, consider his RFC, age, education and past work experience to determine if he could perform other work. If she cannot, she would be deemed disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff first argues that the ALJ should have concluded that she met the requirements for the "listed impairments" for 12.04 (affective disorders), 12.06 (anxiety disorders), and 12.08 (personality disorders). Plaintiff argues that the ALJ specifically erred by determining that Plaintiff had moderate, rather than marked, limitations in social functioning, concentration, persistence, and

pace. In support, Plaintiff argues that the ALJ should have given controlling weight to the RFC determination of Dr. Ajekunie Ajayi, who concluded that Plaintiff had "poor to no" ability to relate to coworkers, use judgment, interact with supervisors, deal with work stresses, maintain attention, maintain concentration, or deal with even simple instructions.

Plaintiff argues that Dr. Ajayi's decision is entitled to complete deference under the treating physician rule. The treating physician rule requires that an ALJ give complete deference to the well-supported statements of treating physicians that are consistent with other substantial evidence of record. *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993). Dr. Ajayi treated Plaintiff several times in 2000. However, an ALJ may reasonably discount the opinions or statements of a treating physician when those statements are unsupported by objective evidence, or when they conflict with other medical evidence on the record. *McCoy o/b/o/ McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995).

As the ALJ pointed out, Dr. Ajayi's description of Plaintiff's condition directly conflicts with other objective evidence on the record. Plaintiff's psychotherapy notes generally indicate that Plaintiff has no difficulties with concentration, attention, or maintaining a normal thought process, though there are a handful of psychotherapy notes indicating that Plaintiff's thought process was circumstantial and focused on her complaints of pain, and the notes made no mention of concentration or attention problems. In support of his RFC finding, Dr. Ajayi stated that Plaintiff has "constant" suicidal thoughts. Plaintiff reported suicidal ideation only occasionally in her psychotherapy sessions. Another treating physician, Dr. Jarmon, concluded that Plaintiff's attention and concentration were normal. Dr. Ajayi's conclusions were not well-supported by the objective medical evidence, and the ALJ was not required to give them complete deference in the face of conflicting evidence from other treating sources.

Plaintiff cites to a variety of other pieces of medical evidence supporting the conclusion that Plaintiff has mental and emotional impairments. The ALJ incorporated substantial mental and emotional restrictions in Plaintiff's RFC when he concluded that Plaintiff had the ability to do no more than simple, routine work in a low stress work environment with limited contact with the public, coworkers, or supervisors. To prove that Plaintiff met one of the listed impairments, however, Plaintiff would have to show that she suffered not just from an emotional or mental impairments, but that these impairments were of "marked" rather than "moderate" severity. The other records Plaintiff relies upon are at best ambiguous about whether Plaintiff's impairments were marked or moderate. Other portions of the record indicate that Plaintiff's impairments were not particularly severe, and that, at least in some periods she was not suffering from concentration or attention deficits at all. While several of Plaintiff's doctors filled out forms indicating that Plaintiff was "totally disabled" or "could not return to work," the ALJ paid close attention to the actual treatment records, which do not indicate the consistent, severe, completely disabling mental and emotional symptoms Plaintiff argues should have been incorporated in her RFC. The ALJ did not err in considering the entire record and concluding that Plaintiff had moderate mental and emotional limitations.

Plaintiff also argues that the ALJ failed to adequately incorporate the limitations imposed by her migraine headaches into her RFC. While Plaintiff testified at the administrative hearing that she suffers constant and incredibly severe migraine headaches, the medical evidence shows that Plaintiff complained of severe problems with headaches only occasionally. (Tr. 214-217, 244-59, 273-294). 20 C.F.R. §§ 404.929, 404.1529 require that an ALJ's credibility determination be made after weighing a variety of factors, including the state of the objective medical evidence, treatment history, physician opinions, and a claimant's daily activities. Social Security Ruling 96-7p requires that an ALJ's credibility findings must be sufficiently specific to make clear to the individual and to any

-8-

subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. The ALJ's opinion clearly finds Plaintiff partially but not entirely credible. The ALJ's written opinion states that Plaintiff's credibility is undermined by conflicts between some of her claims and the objective medical evidence, treatment history, and contemporaneous medical opinions. One of Plaintiff's treating physicians, Dr. Iqbal, noted that there is no objective evidence pointing an underlying physical basis for these headaches. Psychotherapy records indicate that Plaintiff has a tendency to fixate on her complaints of severe pain. The evidence shows that Plaintiff's headaches improved in 2003, and appeared to be under control from September of that year into 2004. (Tr. 305-293). The record supports ALJ's conclusion that Plaintiff had some severe migraine headaches, but that these headaches were not as limiting as Plaintiff alleged. The ALJ's credibility determination adequately comports with **20 C.F.R. §§ 404.929, 404.1529 and** S.S.R. 96-7p.

Plaintiff restates her arguments concerning the ALJ's determination of her RFC, arguing that the vocational expert was improperly instructed. While a vocational expert's testimony is not substantial evidence unless she was properly instructed about Plaintiff's RFC, an ALJ's RFC determination need only be supported by substantial evidence. As discussed above, the ALJ's RFC determination was supported by substantial evidence, and Plaintiff's challenge to the vocational expert's testimony must fail.

Finally, Plaintiff relies upon some evidence that was not before the ALJ at the time of his decision. Presumably, Plaintiff wishes this Court to remand the case for consideration of this additional evidence. In order to obtain a remand on the basis of evidence not submitted to the ALJ, Plaintiff must (1) show good cause for failing to introduce the evidence into the administrative record prior to the ALJ's decision, and (2) that the new evidence is sufficiently material that there is a reasonable probability that the ALJ would have reached a contrary disposition had he considered the evidence. *Willis v. Sec'y*

*of Health and Human Servs.*, 727 F.2d 551, 553-4 (6th Cir. 1994); *Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff has advanced no reason for failing to introduce the evidence upon which she now wishes to rely, and the evidence should therefore be disregarded.

## **RECOMMENDATION**

Plaintiff's Motion for Summary Judgment should be DENIED. Defendant's Motion for Summary Judgment should be GRANTED.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 16, 2006  s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Amended Report and Recommendation was served upon Counsel of Record on this date.

Dated: August 16, 2006         s/ Lisa C. Bartlett
                               Courtroom Deputy